UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JULIA MORGAN, | CASE NO. 1:09CV1001 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Julia Morgan-Hardy ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the undersigned AFFIRMS the Commissioner's decision:

I.  **PROCEDURAL AND FACTUAL HISTORY**

On September 8, 2004, Plaintiff filed an application for SSI. Tr. at 66-68. Plaintiff's application was denied initially and on reconsideration. Tr. at 44-48, 51-53.

On May 27, 2005, Plaintiff filed a request for an administrative hearing. Tr. at 42-43. On July 30, 2007, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. *Id*. at 600-31. At the hearing, the ALJ heard testimony from Plaintiff and Nancy Borgeson, a vocational expert. *Id*. On January 24, 2008, the ALJ issued a Notice of Decision - Unfavorable. *Id*. at 12-26. Plaintiff filed a request for review, which the Appeals Council denied. *Id*. at 5-11.

On April 30, 2009, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On November 3, 2009, Plaintiff filed a brief on the merits. ECF Dkt. #17. On February 2, 2010, Defendant filed a brief on the merits. ECF Dkt. #20. Plaintiff has not filed a reply. *See* ECF Dkt.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ found that Plaintiff has the following severe impairments: obesity, chronic obstructive pulmonary disease, she is a smoker, carpal tunnel syndrome bilaterally, a depressive disorder versus a substance-induced mood disorder or substance induced psychotic disorder, and substance abuse disorder in questionable remission. ECF Dkt. #17. Next, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. Tr. at 18. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work. *Id*. at 19. He specifically found that she could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently and can sit, stand and/or walk for 6 hours each in an 8 hour workday with normal breaks. *Id*. He also found that she had no limitations on gross manipulation, but was limited to occasional repetitive hand and finger movements bilaterally. *Id*. Lastly in regard to Plaintiff's restrictions, the ALJ determined that she was restricted from concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas, and that she is limited to tasks that are simple, routine, low-stress, not performed in public, that involve limited and superficial interaction with supervisors and coworkers, and that she is precluded from tasks that involve arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others. *Id*. Based on Plaintiff's RFC, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a machine operator. *Id*. at 24. Based on the vocational expert's opinion, the ALJ determined that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *Id*. at 26

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

> 3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

**V. ANALYSIS**

    **A.    Whether the ALJ erred in assessing the weights of psychiatrists and a nurse of record**

Plaintiff contends that the ALJ erred in failing to grant substantial weight to the treating and examining sources. ECF Dkt. #17 at 11. Plaintiff first reasons that Dr. Fajobi, her first psychiatrist at MetroHealth, completed a mental health assessment on October 21, 2004, and diagnosed depression, possible major depressive disorder with psychosis, possible substance induced mood disorder, possible substance induced psychotic disorder, alcohol dependence in questionable remission, and cocaine abuse. *Id*. at 11, 13. Plaintiff further explains that Dr. Fajobi assigned a global assessment of functioning ("GAF") score of 41 to 50. *Id*. Plaintiff contends that Dr. Fajobi noted that Plaintiff reported minimal improvement in her depression with five bad days a week. *Id*. at 13 citing Tr. at 342. Lastly, Plaintiff notes that Dr. Fajobi's impression was that Plaintiff had experienced minimal improvement. *Id*. at 13. Plaintiff contends that the ALJ did not consider the foregoing findings that Dr. Fajobi had made. *Id.*

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature,

and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [he or she] is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

Plaintiff's argument lacks merit because, although Dr. Fajobi qualifies as a treating physician, her opinions are not related to Plaintiff's functional limitations. *See Maher v. Sec'y H.&S.S.,* 898 F.2d 1106, 1109 (6th Cir. 1989) (in a case involving disability claim for a physical condition, the court held that ". . .a lack of physical restrictions [in a treating physician's opinion] constitutes substantial evidence for a finding of non-disability."). Here, Plaintiff directs the Court to a progress note from Dr. Fajobi where it is indicated that Plaintiff reported minimal improvement in her depression with five bad days a week. ECF Dkt. 17 at 13 citing Tr. at 342. Further, as Respondent notes, Dr. Fajobi did not set forth any opinion regarding Plaintiff's ability to function in the work setting. *See* Tr. at 342. It does not even appear that Dr. Fajobi's statements related to Plaintiff's "minimal improvement in depression" and that she had "at least 5 bad days a week" were opinions; Dr. Fajobi simply reiterated Plaintiff's complaints under the "subjective" portion of her progress note. *Id.* Contrary to Plaintiff's assertion, Dr. Fajobi did not state an "impression" that Plaintiff had "experienced minimal improvements." *Compare* Dkt. #17 *with* Tr. at 342. Therefore,

the Court finds no error in the ALJ's treatment of Dr. Fajobi's statements.

Next, Plaintiff contends that the ALJ erroneously rejected the opinions of Dr. Brocco as a treating physician. ECF Dkt. #17 at 13. Plaintiff reasons that:

> Dr. Brocco is unquestionably a psychiatrist at MetroHealth and oversaw the work of Ms. Oney whose treatment notes are contained in the record. Dr. Brocco, Ms. Oney and other psychiatrists and counselors apparently worked as a team, caring for Ms. Morgan-Hardy, both in and out of her partial hospitalization program. This arrangement, through a public hospital, does not mean that Dr. Brocco's opinion should be dismissed.

ECF Dkt. #17 at 13-14 (internal citation omitted). Plaintiff's argument lacks merit because it contravenes the rationale underlying the treating physician rule, as articulated by the Sixth Circuit:

> The medical opinion of the treating physician is to be given substantial deference-and, if that opinion is not contradicted, complete deference must be given. *King*, *supra* at 973. *See also Hardaway*, *supra* at 927. **The reason for such a rule is clear. The treating physician has had a greater opportunity to examine and observe the patient.** Further, as a result of his duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians.

*Walker v. Secretary of Health and Human Services*, 980 F.2d 1066, 1070 (6th Cir. 1992) (emphasis added). Plaintiff has not directed the Court to any evidence of record indicating that Dr. Brocco ever personally treated Plaintiff. *See* ECF Dkt. #17 at 13-14. The ALJ noted that there was no such evidence in the record. Tr. at 24. The ALJ rejected a medical source statement completed by psychiatric nurse Tina Oney and Dr. Brocco. Tr. at 23-24 citing 597-98. The ALJ reasoned, in part, that Dr. Brocco had not treated Plaintiff directly. Tr. at 24. The ALJ further reasoned that the medical source statement cited no diagnoses or treatment notes as support. *Id.*; *see Riddle v. Astrue*, Case No. 3:08-CV-132, 2009 WL 2406423 at *4-*9 (E.D.Tenn. July 31, 2009), slip op., *discussed infra*.

On review of the record, the Court finds that the ALJ's decision in regard to Dr. Brocco is supported by substantial evidence. The Court has reviewed the records that Plaintiff cites (Tr. 530, 541, 546, 549, 598) and sees no indication that Dr. Brocco ever examined Plaintiff. There is no indication that she had a greater opportunity to examine and observe Plaintiff than any other physician of record, including the consulting physicians. Thus, the purpose underlying the treating physician rule would not be served by affording controlling weight to Dr. Brocco's opinion.

The Court acknowledges that "in all cases there remains a presumption, albeit a rebuttable

-6-

one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). In this case, however, Dr. Brocco does not qualify as a treating physician. "When the treating physician's opinion is not controlling, **the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship**; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Id.* (emphasis added). Here, the ALJ determined that there were no treatment notes from Dr. Brocco anywhere in the file and her medical source statement did not provide a basis.

In *Riddle*, a district court held that an ALJ properly rejected three physicians' opinions for lack of support. *Riddle*, 2009 WL 2406423 at *4-*9; *see also* 20 C.F.R. § 20 C.F.R. § 416.927(d)(3). By way of example, this Court reiterates the *Riddle* ALJ's rationale related to only one of the medical opinions that were rejected:

> Dr. Kozawa did not explain the rationale or reason for his limitations and his physical examination findings show minimal abnormalities to support his assessed restrictions. In addition, there is no clinical basis established in his treatment records for his limitations in fine manipulation or his estimated level of absenteeism or need for breaks. Thus, his opinion is also unsupported by the record, including the claimant's activities, and I afford this opinion little weight.

*Riddle v. Astrue*, Case No. 3:08-CV-132, 2009 WL 2406423 at *4. Given Dr. Brocco's lack of treatment history and lack of support for her opinion, the Court finds that ALJ properly applied the factors set forth in *Rogers*, and substantial evidence exists to determine that Dr. Brocco's opinion was not entitled to controlling weight or great deference.

Next, Plaintiff contends that the ALJ erred in rejecting Ms. Oney's opinion because a supposed conflict in the record and because of the definition of "fair" used in her assessment. ECF Dkt. #17 at 14. The Court ultimately finds that the ALJ's decision was supported by substantial evidence because, as the Court noted above, the ALJ stated that Ms. Oney's mental source statement does not state a basis for its conclusions. *See* Tr. at 24 citing 597-98 (*see specifically* Tr. at 598, §IV). Typically, "an ALJ has discretion to determine the proper weight to accord opinions from 'other sources' such as nurse practitioners." *Cruse v. Commissioner of Social Sec.,* 502 F.3d 532,

541 (6th Cir. 2007). "[O]pinions from non-medical sources who have seen the claimant in their professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Id*. The *Cruse* court explained that:

> [a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions for these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id*. quoting SSR 06-03P, 2006 WL 2329939 at *7.

The ALJ reasoned that Ms. Oney's opinion failed to indicate the basis on which limitations were given, citing no diagnosis or treatment notes. Tr. at 24. As noted above, Ms. Oney is considered an "other source" for Social Security disability determination purposes. Social Security Ruling 06-03p explains that "[a]lthough the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors can be applied to opinion evidence from 'other sources.' " SSR 06-03-p at *4. One of these factors is how well the source explains the opinion. *Id.*; *see also Cruse,* 502 F.3d at 541.

Like the ALJ in *Riddle*, the ALJ in this case noted that Ms. Oney's opinion stated no factual support and provided no rationale. Tr. at 24; *see Riddle*, 2009 WL 2406423 at *4-*9, *discussed supra*. Notably, the form that she completed reads as follows: "It is important to identify the particular medical or clinical findings (*i.e.*, mental status examination, behavior, intelligence test results, symptoms) which support your assessment of any symptoms." Tr. at 597. "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 416.927(d)(3). Although Ms. Oney's treatment records were contained in the administrative record, it is not clear that those records and only those records formed the basis of her opinion. The ALJ's concerns about the basis of Ms. Oney's opinions are valid because she is not a physician and care must be exercised to ensure that her opinion is rendered within the bounds of her profession. Without knowing the

-8-

basis of Ms. Oney's opinion, it is not possible to determine that it is proper and well-supported.

Despite the Court's finding of substantial evidence supporting the ALJ's decision, the Court notes that it agrees with Plaintiff that the ALJ erred in rejecting Ms. Oney's definition of "fair." The ALJ stated that:

> the form Ms. Oney used to give Ms. Trumbo's [sic] mental capacity defines "fair" as "seriously limited but not precluded. May need special consideration and attention." I question this definition of "fair." "Fair" ability generally indicates only mild or mild-to-to moderate limitations. Therefore, I gave Ms. Oney's opinion little weight, because it is not only inconsistent with her own treatment notes but defines limitations in a way I reject.

Tr. at 24. The ALJ's rationale pertaining to Ms. Oney's definition of "fair" is not proper. Merely because Ms. Oney defined "fair" differently than the ALJ would have chosen to, does not mean that Ms. Oney's findings are unsupported. Ms. Oney conspicuously defined the term "fair" on the form, leaving it up to the ALJ to determine whether her findings were consistent with the record and whether her findings of "fair" abilities, as she defined the term, permitted a finding of disability under the Social Security Regulations. The ALJ's error in this regard was harmless because he was otherwise entitled to reject Ms. Oney's opinion.

The ALJ in this case alternatively explained that Ms. Oney's findings were not consistent with the record because her own treatment notes from May 18, 2007 showed Plaintiff to be oriented in time, person, and place with logical, organized thought processes and no evidence of delusions perceptual disturbances, or suicidal ideation. Tr. at 24 citing Tr. at 546. The ALJ further noted that Plaintiff's insight and judgment were good and that attention and concentration were sustained. *Id*.

The fact that Ms. Oney opined that Plaintiff's attention and concentration were sustained is not necessarily inconsistent with Ms. Oney's medical source statement, but Ms. Oney offered no explanation for the difference in her treatment notes and her medical source statement. The medical source statement form directs the medical source to indicate the patient's "capabilities to perform . . . basic mental activities of work **on a sustained basis. 'On a sustained basis' is defined as for per regular work week.**" Tr. at 597 (emphasis added). Further, Ms. Oney's indication that Plaintiff had a "poor" ability to maintain attention and concentration for extended periods of two hour segments meant that she believed Plaintiff had "No useful ability to function **in a competitive**

**setting**." *See* Tr. at 597 (emphasis added). It also meant that Ms. Oney believed Plaintiff may be able to perform in a sheltered setting. *Id*. Plaintiff's ability to sustain concentration and attention in a few office visits (*see* Tr. at 530, 546)[1] is not necessarily inconsistent with a finding that Plaintiff is unable to sustain concentration and attention during a 40 hour work week in a competitive environment.

Even though Ms. Oney's treatment notes were potentially consistent with her opinion, she offered no explanation or basis for her opinion. There is no indication in Ms. Oney's treatment notes as to why Plaintiff would have a different restriction in a work setting; therefore, the ALJ was justified in rejecting her opinion as unsupported. Therefore, the ALJ was justified in discounting Ms. Oney's opinion pursuant to 20 C.F.R. § 20 C.F.R. § 416.927(d)(3), notwithstanding the *potential* supportability of Ms. Oney's opinion related to Plaintiff's ability to maintain attention and concentration.

Additionally, Ms. Oney indicated in two treatment notes that Plaintiff had good insight and judgment (Tr. at 530, 546), while her medical source statement indicated that Plaintiff had only fair judgment (Tr. at 597).[2] These assessments appear to be inconsistent, even given a limitation to a 40 hour workweek, because there is no indication in Ms. Oney's treatment notes as to why Plaintiff would have a reduction in judgment in a work setting. Since Ms. Oney's treatment notes contain potential inconsistencies with her opinion and since she did not offer an explanation for her opinion, the ALJ was entitled to discount it.

Lastly, Plaintiff contends that the vocational expert opined that a person who missed three to four days a month due to psychological problems could not sustain work activity. ECF Dkt. #17 at 14 citing Tr. at 627. Plaintiff contends that this opinion establishes disability. *Id*. The assumption underlying Plaintiff's argument (*i.e.*, her purported need to miss three to four days a month of work) is invalid because the ALJ's decision in assessing the opinions of record was supported by substantial evidence and did not need to account for such a limitation.

---

[1] Of note, the ALJ only cited Tr. at 546.

[2] The ALJ specifically noted that Ms. Oney's treatment note at page 546 of the transcript contradicted her opinion at page 598.

-10-

For the foregoing reasons, Plaintiff's arguments pertaining to opinion evidence from psychiatrists and a nurse of record are not well-taken.

  **B.**  **Whether the ALJ erred in considering the impact of Plaintiff's mental limitations on her daily functional abilities**

Next, Plaintiff contends that she was started in a partial hospitalization program, where she attended counseling sessions three times a week from 9:00 A.M. through 12:30 P.M. from November 22, 2006 through June 18, 2007. ECF Dkt. #17 at 15. Plaintiff contends that her participation in this program "confirms that for at least 6 months Ms. Morgan-Hardy could not attend work on a full-time consistent basis." ECF Dkt. #17 at 15-16. It is unclear whether Plaintiff is contending that the partial hospitalization program affected her availability for employment or if she is also contending that it confirms the severity of her impairments.

To the extent that Plaintiff contends that her participation in the partial hospitalization program confirms the severity of her condition, Plaintiff has again directed the Court to opinions of Dr. Brocco and Ms. Oney (ECF Dkt. #17 at 16), which the ALJ properly rejected, as discussed in Section V.A., above. Accordingly, the Court finds Plaintiff's brief to lack merit insofar as it can be construed as contending that it confirms the severity of her impairments. The Court will proceed to consider whether the ALJ failed to consider the impact of the partial hospitalization program on Plaintiff's availability for work.

Plaintiff cites no authority for the proposition that participation in a partial hospitalization program has an effect on a claimant's availability for work. Here, even assuming Plaintiff's participation in the partial hospitalization program prohibited her from working,[3] the Regulations dictate a finding of no disability because Plaintiff did not meet the durational requirement. The Sixth Circuit has held:

---

  3  The Court questions whether participation in the partial hospitalization program would preclude work because the Court is not aware of any evidence that would restrict Plaintiff from working a later shift and the ALJ did not restrict Plaintiff from working non-typical shifts. *See*, *e.g.*, *Lennon v. Astrue,* No. 09 C 2211, 2010 WL 2681260 at *3 (N.D.Ill. July 6, 2010) (an ALJ found that a claimant should avoid late night shifts). However, there is also no indication that the jobs that the vocational expert opined Plaintiff could perform were available during non-typical shifts.

> While agency decisions must be sustained, if at all, on their own reasoning, ... this principle "does not mechanically compel reversal 'when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of [the] decision reached.' " Where a subsidiary finding is unfounded, the court will remand the case to the agency for further consideration only if "the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...."

*Berryhill v. Shalala*, No. 92-5876, 1993 WL 361792 at *7 (6th Cir. 1993). Even if the Court were to assume that Plaintiff's partial hospitalization were disabling, the Court has no substantial doubt that the ALJ would have reached the same conclusion. Upon consideration of the severity of Plaintiff's condition, the ALJ found that Plaintiff was not disabled by properly considering the medical opinions and evidence of record. This finding leaves only the question of whether Plaintiff's partial hospitalization would have met the durational requirement, assuming arguendo that the partial hospitalization precluded work. The Court finds it proper to address the durational requirement pertaining to Plaintiff's availability to work as separate and distinct from the issue of the severity of Plaintiff's impairments. The duration or expected duration of Plaintiff's partial hospitalization program has no impact on the severity of her impairments. As discussed above, the ALJ's findings with respect to the severity of Plaintiff's impairments was supported by substantial evidence. Therefore, the Court will proceed to determine whether there is any substantial doubt that the partial hospitalization met the durational requirement in order to establish disability.

"The Act entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in 'substantial gainful activity.' " *Combs v. Commissioner of Social Security*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) citing 42 U.S.C. § 423(d)(1)(A) (emphasis added). Here, Plaintiff has not directed the Court to any evidence that Plaintiff was expected to continue with partial hospitalization for a 12 month period. A partial hospitalization note form June 20, 2007, indicates that "[c]ontinued treatment" was considered necessary, but the note did not specify an expected duration for treatment. Tr. at 525. Additionally, Plaintiff has not directed the Court to any partial hospitalization treatment notes for the period between June 18, 2007 and the date of the ALJ's decision (August 28, 2007). *See* ECF Dkt. #17 at 15-16. Even assuming the partial hospitalization precluded work, the Court has no substantial doubt that the durational requirement was unsatisfied and that the

Commissioner's decision would be the same on remand. Therefore, Plaintiff's argument is not well-taken.

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the ALJ's decision. Plaintiff's case is dismissed in its entirety with prejudice.

DATE: July 13, 2010            */s/George J. Limbert*
                                                GEORGE J. LIMBERT
                                                UNITED STATES MAGISTRATE JUDGE